

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| THE STATE OF TEXAS, | | No. 08-14-00271-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | County Court at Law No. 7 |
| | § | |
| VICTOR MANUEL GALLEGOS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 20120C00815) |
| | § | |

## **O P I N I O N**

The State of Texas appeals from an order purporting to grant a directed verdict in favor of Appellee, Victor Manuel Gallegos, after the court had received the jury's verdict finding Gallegos guilty of class-A misdemeanor criminal mischief. We reverse the order granting the motion for a directed verdict, reform judgment to reflect a conviction of the lesser-included offense of class-B misdemeanor criminal mischief, and remand the cause to the trial court for a punishment hearing.

### **PROCEDURAL AND FACTUAL SUMMARY**

Gallegos was charged with five offenses alleged to have occurred on June 26, 2011: (1) class-A misdemeanor criminal mischief (cause number 20120C00815); (2) burglary of a vehicle (cause number 20120C00942); (3) burglary of a vehicle (cause number 20120C01669); (4) theft (cause number 20120C01670); and (5) evading arrest (cause number 20120C00778). The five

cases were tried together before a jury. This appeal pertains to the criminal mischief case (cause number 20120C00815). The information alleged that Gallegos intentionally or knowingly damaged and destroyed a vehicle door handle without the effective consent of the owner, Jesus Gilberto Leos, thereby causing a pecuniary loss in the amount of $500 or more but less than $1,500. Thus, the information charged Gallegos with class-A misdemeanor criminal mischief. *See* TEX.PENAL CODE ANN. § 28.03(b)(3)(A) (West 2011).

The evidence showed that Gallegos and Julio Acosta attempted to enter the Nova Luna bar through a back door used only by bar personnel and band members. One of the bar's security guards, Fernando Chavez, stopped them and told them they had to enter through the front door and pay the cover charge like everyone else. Chavez watched Gallegos and Acosta get into their vehicle and drive "crazy" through the parking lot. The vehicle stopped and one man got out of the car while the other man parked the vehicle. Acosta walked through the parking lot and checked vehicle doors to see if they were locked. Chavez continued watching from behind a rock wall, and he saw Acosta take the hubcaps off of a truck while Gallegos acted as a lookout. Chavez alerted other security personnel at the bar when he saw Gallegos chasing a parking lot attendant. Deputy Sheriff Juan Munoz was patrolling in the area that evening, and as he drove by Nova Luna, one of the bar's security guards flagged him down. The security guard told him that two men were trying to break into cars in the parking lot. Munoz sometimes worked off-duty security at the bar, so he was familiar with the area. Munoz drove his patrol unit into the parking lot and used a spotlight to find the two men. Both men ran away when they saw him, and after a brief chase, Munoz caught Acosta and took him into custody. With the help

of the bar's security personnel, he apprehended Gallegos. After securing both Acosta and Gallegos, Munoz checked the vehicles in the parking lot and observed that the door to a Ford truck was open. The truck's center console was open and a case for eyeglasses was on the ground next to the truck. Munoz saw that the hubcaps were missing from another truck. Munoz also noticed that a Mazda had damage to the door handle. He located Gallegos's gray Dodge Neon in the parking lot and saw items inside of the car which had been stolen from vehicles in the bar's parking lot, including a set of hubcaps.

The owner of the Mazda, Jesus Leos, testified at trial that the handle was not broken when he went into the bar and it cost him $120 to have it repaired. No other evidence was offered to prove that the pecuniary loss exceeded $500. After the State rested, Gallegos moved for a directed verdict with respect to the criminal mischief case on the ground that the State failed to prove that he had any involvement in any of the offenses committed by Acosta. After some discussion, the trial court pointed out that the proof showed that the pecuniary loss was only $120. In response, the State asserted that it was entitled to an instruction on the lesser-included offense of Class-B misdemeanor criminal mischief.[1] The trial court took Gallegos's motion for directed verdict under advisement and the defense presented its case.

---

[1] Criminal mischief is a class-B misdemeanor when the pecuniary loss is more than $50 but less than $500. TEX.PENAL CODE ANN. § 28.03(b)(2) (West 2011). The trial court erred by denying the State's request for the lesser-included offense and ruling that the State was required to first amend the information in order to be entitled to submission of a lesser-included offense. The Court of Criminal Appeals held in *Grey v. State*, 298 S.W.3d 644, 645-51 (Tex.Crim.App. 2009) that the State is entitled to submission of a lesser-included offense, upon request, provided that the offense is actually a lesser-included offense. Thus, the only issue the trial court should have considered is whether class-B misdemeanor criminal mischief is a lesser-included offense of class-A misdemeanor criminal mischief. The State was not required to amend the charging instrument in order to be entitled to the lesser-included offense instruction.

Gallegos's co-defendant, Acosta, testified for the defense. Like Gallegos, he was charged with five offenses, but he agreed to plead guilty to four of the offenses in exchange for dismissal of one of the cases. Acosta had been placed on probation for fourteen months, and at the time of trial, he had completed his probation and paid all of his fees. Acosta testified that he was driving Gallegos's vehicle that evening because Gallegos was more intoxicated. Acosta admitted that he broke into cars in the Nova Luna parking lot, but he maintained that Gallegos did not assist him in committing the offenses because he "didn't want nothing to do with it."

Gallegos testified that he was extremely drunk that evening and he tried to convince Acosta to stop breaking into cars, but Acosta would not listen to him. He denied acting as a lookout, but he knew that Acosta was putting the stolen property in his car.

After the defense rested and both the State and defense closed, the trial court and the parties again discussed Gallegos's motion for directed verdict, but the court did not rule on the motion. The trial court denied the State's request for an instruction on the lesser-included class-B criminal mischief offense, and the court submitted all five cases to the jury, including the class-A misdemeanor criminal mischief case. The court's charge included an instruction on the law of parties. After the jury began its deliberations, Gallegos renewed his motion for directed verdict, but the court still did not rule on the motion. The jury found Gallegos guilty in all five cases, including the class-A misdemeanor criminal mischief case. The trial court received the jury's verdicts and discharged the jury.

Three weeks later, the trial court conducted the punishment hearing. At the beginning of the hearing, Gallegos reminded the court that his motion for a directed verdict was still pending.

- 4 -

The trial court then granted the motion and directed a verdict of acquittal with respect to the criminal mischief charge and one of the burglary of a vehicle charges (cause number 20120C00942).[2] The written judgment of acquittal inaccurately reflects that the court granted the directed verdict at the end of the State's case:

> Thereupon, also came a jury of six good and lawful persons who had been sworn and impaneled to try this cause. The information was then read and the Defendant pleaded not guilty thereto; and the Jury having heard the information read, the Defendant's plea of not guilty thereto, the State's evidence in the case, and at the end of the State's case, the Court granted Defendant's Motion For Directed Verdict which verdict was duly received and filed.

In the three remaining cases, the trial court sentenced Gallegos to confinement for 365 days in the El Paso County Jail, probated for six months, and "a fine of $300.00 Probated for $0.00."[3]

## IMPROPER GRANTING OF A JNOV

In its sole issue, the State contends that once the trial court received the jury's verdict finding Gallegos guilty of class-A misdemeanor criminal mischief, the court had no authority to grant Gallegos's motion for directed verdict and enter a judgment reflecting a different verdict than that of the jury. Gallegos responds that the trial court did not abuse its discretion by effectively granting a motion for new trial due to insufficient evidence.

The trial court purportedly granted Gallegos's motion for a directed verdict during the punishment hearing held three weeks after the jury had returned its verdict of guilty and the court had received that verdict. A "directed verdict" is commonly defined as the action taken by a trial

---

[2] The judgment of acquittal entered in cause number 20120C00942 is the subject of a separate State's appeal, *State of Texas v. Victor Manuel Gallegos*, cause number 08-14-00272-CR.

[3] Gallegos filed notice of appeal in those three cases (appellate cause numbers 08-14-00274-CR, 08-14-00275-CR, and 08-14-00276-CR).

judge in a jury trial to decide the issues in the case without allowing them to be submitted to the jury because, as a matter of law, the party with the burden of proof has failed to make a prima facie case for jury consideration. *State v. Lewallen*, 927 S.W.2d 737, 739 n.2 (Tex.App.--Fort Worth 1996, no pet.). Thus, it is a ruling which a court makes before the case is submitted to the jury, or at the very least, before the court receives the jury's verdict. The trial court's action in entering a judgment of acquittal after it received the jury's guilty verdict is the functional equivalent of a JNOV.

It is well established that a trial court does not have authority to grant a JNOV in a criminal case. *State v. Savage*, 933 S.W.2d 497, 499 (Tex.Crim.App. 1996). When a case is tried by a jury, Article 42.01 requires that the judgment of the trial court must reflect "[t]he verdict or verdicts of the jury[.]" TEX.CODE CRIM. PROC. ANN. art. 42.01, § 1(7) (West Supp. 2015); *see Savage*, 933 S.W.2d at 499. For this reason, the Court of Criminal Appeals held in *Savage* that a trial court does not have the authority to grant a different judgment—a judgment non obstante veredicto—than that rendered by the jury. *Id.* Texas courts have held that the trial court may not receive the jury's verdict and then enter a different judgment than the one called for by the jury's verdict. *Combes v. State*, 286 S.W.2d 949, 950 (Tex.Crim.App. 1956); *Dunn v. State*, 176 S.W.3d 880, 885 (Tex.App.--Fort Worth 2005, no pet.); *Chafin v. State*, 95 S.W.3d 549, 555 (Tex.App.--Austin 2002, no pet.). Once the jury has returned a guilty verdict and that verdict is read aloud in open court, the trial court is not authorized to then grant a motion for directed verdict and enter a judgment of acquittal. *See Savage*, 933 S.W.2d at 499; *Dunn*, 176 S.W.3d at 885; *Chafin*, 95 S.W.3d at 555. We conclude that the trial court's action in entering a

different verdict than the one returned by the jury was unauthorized and improper.

A trial court does have authority, however, to grant a criminal defendant's motion for new trial on the ground that the evidence is insufficient. *See Savage*, 933 S.W.2d at 499; TEX.R.APP.P. 21.3(h)(requiring new trial when the verdict is contrary to the law and the evidence). This power is the functional equivalent of granting a JNOV in a civil case. *Id.* Even though Gallegos did not file a motion for new trial, the trial court's order granting the directed verdict and the judgment of acquittal have the same effect as a trial court granting a new trial for legally insufficient evidence. *See Savage*, 933 S.W.2d at 499; *State v. McClelland*, No. 11-05-00191-CR, 2006 WL 2692875, *1 (Tex.App.--Eastland September 21, 2006, no pet.) (not designated for publication). When an order is the functional equivalent of an order granting a motion for new trial, the reviewing court should look beyond the label and treat the ruling as an order granting a new trial. *See Savage*, 933 S.W.2d at 499; *State v. Evans*, 843 S.W.2d 576, 577 (Tex.Crim.App. 1992). Accordingly, we will review the order improperly granting the motion for directed verdict as though the trial court had granted a motion for new trial on the ground of insufficient evidence.

*Standard of Review*

A trial court's order granting a new trial is reviewed for an abuse of discretion. *State v. Zalman*, 400 S.W.3d 590, 593 (Tex.Crim.App. 2013); *State v. Provost*, 205 S.W.3d 561, 566 (Tex.App.--Houston [14th Dist.] 2006, no pet.). When deciding a motion for new trial challenging the legal sufficiency of the evidence, the trial court applies the appellate legal sufficiency standard of review. *Provost*, 205 S.W.3d at 567. Thus, the trial court is required to

- 7 -

view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.* The trial court does not sit as a thirteenth juror and it is not permitted to substitute its view of the evidence for that of the jury. *Id.* If the evidence is sufficient to meet the legal sufficiency standard, a trial court abuses its discretion by granting a motion for new trial. *Id.*

*Sufficiency of the Evidence*

When viewed in the light most favorable to the jury's guilty verdict, the evidence establishes that Acosta attempted to break into vehicles in the Nova Luna parking lot while Gallegos acted as a lookout. The security guard, Chavez, watched Acosta trying to open vehicle doors, and he heard Gallegos alert Acosta by pretending to cough whenever anyone was approaching the area. Both Acosta and Gallegos admitted that Acosta was breaking into cars in the parking lot. Even though Gallegos denied doing anything to assist Acosta in the commission of these offenses, it was the jury's responsibility to determine the credibility of the witnesses and resolve the conflicts in the evidence. Jesus Leos, the owner of the damaged vehicle, testified that his door handle was not damaged when he went into the bar that evening, but it was damaged when he came out of the bar. Leos paid $120 to have the door handle repaired. The evidence is legally sufficient to permit a rational trier of fact to find beyond a reasonable doubt that Gallegos, acting with intent to promote or assist the commission of the offense, aided or attempted to aid Acosta to commit the offense of criminal mischief. The State concedes that the pecuniary loss to the owner was only $120, and therefore, the evidence is insufficient to prove that the pecuniary loss fell within the class-A misdemeanor range.

- 8 -

Criminal mischief causing $120 in damage is a class-B misdemeanor. *See* TEX.PENAL CODE ANN. § 28.03(b)(2). Class-B misdemeanor criminal mischief is a lesser-included offense of class-A misdemeanor criminal mischief. *See Merwin v. State*, No. 05-05-01482-CR, 2006 WL 1738317, at *1 (Tex.App.--Dallas June 27, 2006, pet. ref'd) (not designated for publication) (holding that class-C criminal mischief is a lesser-included offense of class-B criminal mischief). The trial court refused the State's request for an instruction on the lesser-included offense of class-B misdemeanor criminal mischief, and the jury returned a verdict finding Gallegos guilty of class-A misdemeanor criminal mischief. By granting Gallegos's renewed request for a "directed verdict" at the punishment phase of trial and entering a judgment of acquittal, the trial court failed to consider the evidence supporting Gallegos's guilt of class-B misdemeanor criminal mischief.

The Court of Criminal Appeals explained in *Thornton v. State* that "[a]ny time the State carries its burden with respect to this lesser offense, and the jury, by its verdict, has necessarily found every constituent element of that lesser offense, the appellant would enjoy an 'unjust' windfall from an outright acquittal." *Thornton v. State*, 425 S.W.3d 289, 298 (Tex.Crim.App. 2014). When a reviewing court finds the evidence legally insufficient to prove the greater-inclusive offense, the court is required to reform the judgment to reflect a conviction for a lesser-included offense if: (1) in the course of convicting the defendant for the greater offense, the jury must necessarily have found all of the elements necessary to convict the defendant for the lesser-included offense; and (2) there is legally sufficient evidence to support a conviction for that lesser-included offense. *Thornton*, 425 S.W.3d at 300. Reformation of the judgment to reflect a

conviction for the lesser-included offense is required to avoid the "unjust" result of an outright acquittal. *Id.*

By finding Gallegos guilty of class-A misdemeanor criminal mischief, the jury necessarily found all of the elements necessary to convict him of class-B misdemeanor criminal mischief. Further, the evidence is legally sufficient to support a conviction of class-B misdemeanor criminal mischief. Consequently, we hold that the trial court abused its discretion by improperly granting Gallegos's motion for directed verdict and entering a judgment of acquittal after the jury returned a guilty verdict. Issue One is sustained. We reverse the judgment of acquittal, reform the judgment to reflect a conviction for the lesser-included offense of class-B misdemeanor criminal mischief, and remand the cause to the trial court for a punishment hearing. *See* TEX.CODE CRIM.PROC.ANN. art. 44.29(b)(West Supp. 2015).

STEVEN L. HUGHES, Justice

December 9, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)